**Omar M. WAGEED**

v.

**SCHENUIT INDUSTRIES, INC.**

**Civ. No. 73–565–K.**

United States District Court,
D. Maryland.

Dec. 11, 1975.

**218**

———◆———

Patrick A. U. Opara, Baltimore, Md., for plaintiff.

Lawrence S. Wescott, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

Plaintiff, Omar M. Wageed, instituted the within action pursuant to 42 U.S.C. § 1981 seeking compensatory and punitive damages, and declaratory and injunctive relief, against defendant, Schenuit Industries, Inc., asserting that defendant discriminated against him because of his race or color in connection with matters relating to his employment and the termination thereof. Prior to instituting the within suit, plaintiff on June 23, 1971 filed charges with the Commission on Human Relations of the State of Maryland (Commission). The Commission notified plaintiff by a letter dated September 14, 1971 that it found probable cause to believe that defendant had engaged in discriminatory practices. On June 4, 1973, while the complaint was still pending before the Commission, plaintiff instituted this case in this Court. In January 1974, this Court,

without objection of any of counsel, agreed to hold this case *sub curia* pending decision by the Commission. A three-person hearing tribunal held hearings on January 29, 1974 and February 13, 1974. On January 17, 1975, that tribunal filed its decision finding that defendant had not engaged in discriminatory conduct. The Commission, in an Order issued January 31, 1975, adopted as its own the decision of that tribunal and notified plaintiff of the right to appeal, under Maryland's Administrative Procedure Act, within 30 days.[1] No appeal was taken.

On April 10, 1975, defendant filed a motion for summary judgment asserting that there are no material issues of fact since all the issues were fully litigated before the Commission and also contending that that decision is *res judicata*. Plaintiff, in response, argues that the Commission's decision is not *res judicata* and that there are controverted facts.

### RES JUDICATA

Decisions of state administrative bodies have generally been held not to support the defense of *res judicata* in subsequent Title VII actions.[1A] In *Cooper v. Philip Morris, Inc.*, 464 F.2d 9 (6th Cir. 1972), plaintiffs filed charges of discrimination before the Kentucky Commission on Human Rights. That Commission, after holding a six-day hearing, restored plaintiffs to their jobs but denied them back pay. Defendant's motion for summary judgment in a subsequent Title VII action commenced by plaintiffs in federal district court was granted on the grounds that plaintiffs had elected to pursue their claims before the Kentucky Commission on Human Rights and that the Commission's determination was binding on them. The Sixth Circuit reversed, holding that the defenses of *res judicata* and collateral estoppel were not applicable. In so doing, the Sixth Circuit (at 11) quoted the following statement in *Voutsis v.*

---

1. Md.Ann.Code art. 41, §§ 244 *et seq.* (1971 Repl. Vol.).

1A. 42 U.S.C. § 2000e *et seq.*

*Union Carbide Corp.*, 452 F.2d 889, 894 (2d Cir. 1971):

\* \* \* The system of remedies is a complementary one, with the federal remedy designed to be available after the state remedy has been tried without producing speedy results.

We also agree with the conclusion of the Fifth, Sixth and Eighth Circuits that the doctrines of *res judicata* and *collateral estoppel* do not bar appellant as a matter of law. \* \* \* [Citations omitted.]

In *Cooper*, after quoting from and discussing not only *Voutsis* but also Judge Sobeloff's opinion in *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir.), *cert. dismissed*, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971), Judge Edwards wrote (at 11–12):

We are, however, persuaded to the course we now adopt partly by the logic of the cases we have cited and quoted above, but perhaps even more definitely by a 1972 amendment to Title VII of the Equal Opportunity Act. Here very recently the Congress considered our same problem and established a statutory standard as to the effect of a prior state Fair Employment Practices Commission decision:

In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the [deferral] provisions of subsections (c) and (d). 42 U.S.C. § 2000e–5(b), as amended by Pub.L. 92–261; 86 Stat. 103 (1972).

We recognize, of course, that the District Judge could not have had the benefit of this statutory change, that it is not applicable retroactively, and that it is squarely addressed to the EEOC rather than the courts. Nonetheless, the just quoted standard of weight and respect to be given to a prior state agency adjudication is one which comports with the remedial purposes of the Equal Employment Opportunity Act and with the prior case law in this circuit (*see Newman v. Avco Corp., etc., supra*),[2] and we now adopt it.

While these considerations are determinative of our result in this case, we note appellants' additional arguments that the class of plaintiffs in this suit differed somewhat from that involved in the action before the Kentucky Commission, that by Kentucky law no relief was available concerning attorneys' fees where federal law provides for such under appropriate circumstances, and that Kentucky evidence rules pertaining to back wages differ substantially from the rules applicable in the federal courts. These differences provide an alternative ground for the result we have reached.

In *Batiste v. Furnco Construction Corporation*, 503 F.2d 447 (7th Cir. 1973), plaintiffs after being denied employment filed complaints with Illinois' Fair Employment Practices Commission (FEPC) as well as with the federal Equal Employment Opportunity Commission (EEOC). Following extensive hearings before the FEPC, a hearing examiner recommended that the complaints be dismissed. After being advised of their right to sue by the EEOC, plaintiffs filed a Title VII action in federal district court. The FEPC subsequently reversed the hearing examiner's determination, issued a cease and desist order and awarded lost wages to plaintiffs. Defendant appealed the award to the appropriate Illinois court. The federal district court granted plaintiffs' motion for summary judgment, relying on the determination of the FEPC but limited relief to award of attorneys' fees, the only relief sought in the federal proceeding which had not previously been grant-

2. 451 F.2d 743 (6th Cir. 1971).

ed by the FEPC. The Seventh Circuit, at a time when defendant's appeal was still pending in the Illinois Court, reversed the judgment of the federal district court, holding that the FEPC determination was not *res judicata* in the subsequent Title VII action, and specifically (at 450) noting its agreement with *Cooper*. In so doing, the Seventh Circuit also stated (at 450):

> * * * There is a strong Congressional policy that plaintiffs not be deprived of their right to resort to the federal courts for adjudication of their federal claims under Title VII. Recently, Congress amended Title VII to explicitly provide that:
>
>> In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the [deferral] provisions of subsections (c) and (d). 42 U.S.C. § 2000e–5(b), as amended by Pub.L. 92–261; 86 Stat. 103 (1972).
>
> While this provision is addressed to the E.E.O.C. rather than the courts, it is strongly indicative of the Congressional policy that final responsibility for the administration of Title VII rests within the federal system.[1] See

[1] It would be meaningless for Congress to set up standards for E.E.O.C. examination of cases after determinations were made in state proceedings if Congress intended that those cases be barred from consideration in federal court. The E.E.O.C. which lacks enforcement power, would be attempting to mediate with defendants who were already protected from any further legal action.

*Cooper, supra*, 464 F.2d at 12. It is also apparent that if federal actions are barred by the application of election of remedies and res judicata, then the statutory scheme of deferral to state proceedings will be frustrated by requiring that the plaintiff, who desired to bring an action in federal court, first commence state proceedings but abandon them quickly before an adjudication is made.

Defendant also argues that full faith and credit should be afforded to the state determination, thus barring the subsequent Title VII action in federal court. Defendant asserts that the courts have never considered this question before. However, full faith and credit implemented by federal statute (28 U.S.C. § 1738) is the means by which state adjudications are made res judicata. *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177, 1184 (3rd Cir. 1972). And "other well-defined federal policies, statutory or constitutional, may compete with those policies underlying section 1738." *American Mannex Corporation v. Rozands*, 462 F.2d 688, 690 (5th Cir. 1972), cert. den., 409 U.S. 1040, 93 S.Ct. 524, 34 L.Ed.2d 489. It has been determined that the Congressional policies embodied in Title VII require that res judicata not be applied to state adjudications. *Cooper, supra; Voutsis v. Union Carbide Corporation*, 452 F.2d 889 (2nd Cir. 1971) and *Young v. South Side Packing Company*, 369 F.Supp. 59 (E.D.Wis. 1973).

Before a plaintiff can bring a Title VII action into federal court for unlawful employment practices, he must first file a charge with any state or local authority which is authorized to grant or itself to seek, on behalf of such plaintiff, relief from such practices. 42 U.S. C. § 2000e–5(c) provides in part:

(c) In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under

the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. * * *

Since a plaintiff must submit his claim to such a state or local authority prior to bringing a Title VII action, a decision that the determination by the state or local authority is *res judicata* would foreclose plaintiffs from ever having federal courts adjudicate Title VII actions unless plaintiffs were permitted, by an end-run type of tactic, *see Batiste v. Furnco Construction Corporation*, 503 F.2d, *supra* at 449–50, to submit their claims to the state and then abort their claims before that body prior to its decision. As indicated in certain of the cases cited *supra*, that result would run counter to the congressional purpose underlying 42 U.S.C. § 2000e–5(c).

This case is brought not under Title VII, but rather under 42 U.S.C. § 1981.[3] The new case law seemingly is silent as to the effect of state administrative proceedings on subsequent section 1981 actions. However, many of the same considerations which have led the courts to refuse to apply *res judicata* effect to prior determinations in state administrative proceedings in subsequent Title VII actions are present with respect to section 1981 actions. A plaintiff need not assert his claim and exhaust his state administrative remedies before proceeding in federal court under 42 U. S.C. § 1983. *See McCray v. Burrell*, 516 F.2d 357 (4th Cir. 1975), *cert. granted*, 423 U.S. 923, 96 S.Ct. 264, 46 L.Ed.2d 249 (1975). In *Monroe v. Pape*, 365 U. S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), Mr. Justice Douglas wrote, in language subsequently quoted by the Court in its opinion in *McNeese v. Board of Education*, 373 U.S. 668, 671– 72, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622 (1963): "* * * The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. * * *" Both *Monroe* and *McNeese* were cases brought under 1983, not 1981. However, exhaustion of state remedies and EEOC administrative processes are also apparently not required when 1981 is concerned. *See Johnson v. Railway Express Agency*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).[4] Further, it should be kept well

---

3. That statute provides:
   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

4. Therein, Mr. Justice Blackmun wrote:
   * * * Although this Court has not specifically so held, it is well settled among the Federal Courts of Appeals [6]— and we now join them—that § 1981 · affords a *federal* remedy against discrimination in private employment on the basis of race. * * *
   Petitioner, and the United States as *amicus curiae*, concede, as they must, the *independence* of the avenues of relief respectively available under Title VII and the older § 1981. See *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 416–417, n. 20 [88 S.Ct. 2186, 2191, 20 L.Ed.2d 1189] (1968). Further, it has been noted that the filing of a Title VII charge and resort to Title VII's administrative machinery are not prerequisites for the institution of a § 1981 action. *Long v. Ford Motor Co.*, 496 F.2d 500, 503–504 (CA6 1974); *Caldwell v. National Brewing Co.*, 443 F.2d 1044, 1046 (CA5 1971), cert. denied, 405 U.S. 916 [92 S.Ct. 931, 30 L.Ed.2d 785] (1972); *Young v. International Tel. & Tel. Co.*, 438 F.2d 757, 761–763 (CA3 1971). Cf. *Waters v. Wisconsin Steel Works*, 427 F.2d 476, 487 (CA7), cert. denied *sub nom. International Harvester Co. v. Waters*, 400 U.S. 911 [91 S.Ct. 137, 27 L.Ed.2d 151] (1970). [Emphases supplied.]

   6. *Young v. International Tel. & Tel. Co.*, 438 F.2d 757 (CA3 1971); *Brown v. Gaston County Dyeing Machine Co.*, 457 F.2d 1377 (CA4), cert. denied, 409 U.S. 982, [93

in mind that the independence of federal and state remedies and the reference to the federal remedy as "supplementary" to the state remedy should not be read as indicating that plaintiffs, who first voluntarily pursue state administrative remedies, should be discouraged from and even penalized for so doing. As far as this Court can ascertain, there is nothing in the language in any of the opinions of the Supreme Court or the Fourth Circuit which suggests that a plaintiff is barred pursuant to the doctrine of *res judicata* in a subsequent federal action under 42 U.S.C. §§ 1981–85 if he chooses to exhaust state remedies and loses at the state administrative level. Indeed, the indications in the case law are to the contrary.

In *Johnson v. Railway Express Agency, supra* at 460–61, 95 S.Ct. 1716, resort to Title VII's administrative machinery was held not to be a prerequisite to the institution of a section 1981 action. In *Johnson*, the Court also held that limitations in a section 1981 action are not tolled by the filing of an EEOC complaint. Therein, Mr. Justice Blackmun discussed, in the face of the dissenting opinion, as to the tolling issue, filed by Mr. Justice Marshall and concurred in by Mr. Justice Douglas and Mr. Justice Brennan, the negative effect the majority's holding as to tolling might have upon the use of the conciliation mechanism of the EEOC. Nevertheless, the Court felt constrained so to hold regardless of any such possible effect. But in so concluding, Mr. Justice Blackmun referred (at 465, 95 S.Ct. 1716) to the possibility that a plaintiff could file his section 1981 action and request that the federal district court stay proceedings until administrative efforts at conciliation and voluntary compliance had been completed. Although Mr. Justice Black-

mun was speaking specifically about EEOC and not state administrative proceedings, his suggestion would seem equally applicable to such state proceedings. It is also to be noted that in *Johnson*, the Supreme Court did not give any indication that any EEOC determination might be *res judicata* in a later federal district court action.

In the within action, the plaintiff filed his federal court action after he had received the Commission's letter that it had found probable cause, but before the Commission had held hearings on the complaint. As recited *supra*, the within action was held *sub curia* after discussion with all, and without objection by any, of counsel pending the decision of the Commission. Thus the procedure followed herein was similar to that which the Supreme Court indicated was permissible in the context of simultaneous EEOC and 1981 court proceedings.

Further guidance is available from *Alexander v. Gardner-Denver Company*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In *Alexander*, plaintiff, after his discharge from employment, filed an arbitrable grievance under a collective bargaining agreement which included a nondiscrimination clause, and then filed a complaint with the Colorado Civil Rights Commission. The latter agency referred the complaint to the EEOC. The arbitrator, acting pursuant to the collective bargaining agreement, had found that plaintiff had been dismissed for cause. The EEOC found that there was not a reasonable basis for concluding that plaintiff had been discriminated against on the basis of race. Plaintiff filed a Title VII action in federal district court. That court granted defendant's motion for summary judgment on the ground that plaintiff was

---

S.Ct. 319, 34 L.Ed.2d 246] (1972); *Caldwell v. National Brewing Co.*, 443 F.2d 1044 (CA5 1971), cert. denied, 405 U.S. 916 [92 S.Ct. 931, 30 L.Ed.2d 785] (1972); *Long v. Ford Motor Co.*, 496 F.2d 500 (CA6 1974); *Waters v. Wisconsin Steel Works*, 427 F.2d 476 (CA7), cert. denied

*sub nom. International Harvester Co. v. Waters*, 400 U.S. 911 [91 S.Ct. 137, 27 L.Ed.2d 151] (1970); *Brady v. Bristol-Meyers, Inc.*, 459 F.2d 621 (CA8 1972); *Macklin v. Spector Freight Systems, Inc., supra*.

barred by the arbitrator's decision and thereby precluded from suing under Title VII. The Tenth Circuit affirmed, 519 F.2d 503. Reversing, Mr. Justice Powell, on behalf of a unanimous Court, held that plaintiff had a right to proceed in federal court upon his Title VII claim, and wrote (at 47–50, 94 S.Ct. at 1019–1020):

> In addition, legislative enactments in this area have long evinced a general intent to accord *parallel* or *overlapping* remedies against discrimination.[7]
>
> 7. See, *e. g.*, 42 U.S.C. § 1981 (Civil Rights Act of 1866); 42 U.S.C. § 1983 (Civil Rights Act of 1871).
>
> In the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.*, Congress indicated that it considered the policy against discrimination to be of the "highest priority." *Newman v. Piggie Park Enterprises, supra* [390 U.S. 400], at 402 [88 S.Ct. 964, at 966, 19 L.Ed.2d 1263]. Consistent with this view, Title VII provides for consideration of employment-discrimination claims *in several forums.* See 42 U.S.C. § 2000e–5(b) (1970 ed., Supp. II) (EEOC); 42 U.S.C. § 2000e–5(c) (1970 ed., Supp. II) (state and local agencies); 42 U.S.C. § 2000e–5(f) (1970 ed., Supp. II) (federal courts). And, in general, *submission of a claim to one forum does not preclude a later submission to another.* Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue *independently* his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to *supplement,* rather than supplant, existing laws and institutions relating to employment discrimination. In sum, Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement.

In reaching the opposite conclusion, the District Court relied in part on the doctrine of election of remedies.[10]

10. The District Court adopted the reasoning of the Sixth Circuit in *Dewey v. Reynolds Metals Co.*, 429 F.2d [324], at 332, affirmed by an equally divided Court, 402 U.S. 689 [91 S.Ct. 2186, 29 L.Ed.2d 267] (1971), which was apparently based in part on the doctrine of election of remedies. See n. 5, *supra.* The Sixth Circuit, however, later described *Dewey* as resting instead on the doctrine of equitable estoppel and on "themes of res judicata and collateral estoppel." *Newman v. Avco Corp.*, 5 Cir., 451 F.2d 743, 747 n. 1 (CA6 1971). Whatever doctrinal label is used, the essence of these holdings remains the same. The policy reasons for rejecting the doctrines of election of remedies and waiver in the context of Title VII are equally applicable to the doctrines of *res judicata* and collateral estoppel.

That doctrine, which refers to situations where an individual pursues remedies that are legally or factually inconsistent,[11] has no application in the

11. See generally 5A A. Corbin, Contracts §§ 1214–1227 (1964 ed. and Supp.1971). Most courts have recognized that the doctrine of election of remedies does not apply to suits under Title VII. See, *e. g.*, *Bowe v. Colgate-Palmolive Co.*, 416 F.2d, at 714–715; *Hutchings v. United States Industries*, 428 F.2d, at 314; *Macklin v. Spector Freight Systems*, 156 U.S.App.D.C. 69, 80–81, 478 F.2d 979, 990–991 (1973); *Voutsis v. Union Carbide Corp.*, 452 F.2d 889, 893–894 (CA2 1971), cert. denied, 406 U.S. 918 [92 S.Ct. 1768, 32 L.Ed.2d 117] (1972); *Newman v. Avco Corp., supra*, at 746 n. 1; *Oubichon v. North American Rockwell Corp.*, 482 F.2d, at 572–573.

present context. In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results

from permitting both rights to be enforced in their respectively appropriate forums. * * * [Emphases supplied; certain footnotes omitted.]

Mr. Justice Powell's specific reference to 42 U.S.C. § 1981 in footnote 7 in his opinion in *Alexander* is to be noted.

In sum, this Court concludes that denial of *res judicata* effect in a subsequent 1981 federal district court action to a prior state administrative agency determination is more consistent with the intent of the federal Congress and with encouragement to plaintiffs first to pursue available state and federal administrative channels in their quest for relief from discriminatory employment practices than is the opposite conclusion. Accordingly, defendant's motion for summary judgment, to the extent the same rests upon *res judicata* or similar principles, is hereby denied.

## EXISTENCE, VEL NON, OF CONTROVERTED FACTS

The administrative record before the state tribunal has been submitted to this Court. That record may constitute evidence in this case. It may also, under appropriate circumstances, entitle the defendant to the grant of summary judgment. *See Batiste v. Furnco Construction Corporation, supra* at 451. *See also Predmore v. Allen,* 407 F.Supp. 1067 (D.Md.1975) and the cases cited therein.[5] In this case, to date, plaintiff has responded to defendant's claim to entitlement to summary judgment on the grounds that there are no controverted facts, by a general type of denial in a memorandum authored by counsel. Plaintiff is hereby afforded the opportunity to file affidavits and other appropriate documents in accordance with Federal Civil Rule 56 setting forth spe-

cifics and details as to controverted facts, provided plaintiff so does on or before January 9, 1976. If plaintiff so does, defendant may file a rebuttal thereto on or before January 23, 1976. Following that date, unless one or both parties ask for a hearing, this Court will proceed to rule upon the defendant's summary judgment motion based on defendant's assertion of lack of controverted facts.

---

5. The fact that the administrative record before the EEOC is available for use in a subsequent court proceeding but does not, under any of the differing views which have been expressed in the cases cited in *Predmore*, conclusively require the court to adopt the administrative determination, is itself a clear indication that an EEOC determination is not to be accorded *res judicata* or collateral estoppel effect. There would seem no reason to differentiate between an EEOC and a state FEPC determination in that regard.