Bernard E. URY, Louis Gottlieb, Alan Shor and James M. Gilmore, Plaintiffs,

v.

Kenneth SANTEE, James A. Schwietert, Thelma B. Simon, Robert McHugh, William C. Orth, James Reichmann, Frank Fernholz, Lorene Burghart, J. Kroy Ostergaard, Lemuel H. Tate and Russell B. Joseph, Defendants.

No. 69 C 1146.

United States District Court
N. D. Illinois, E. D.

Aug. 25, 1969.

Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Rupert J. Groh, Jr., Chicago, Ill., for plaintiffs.

Matthew J. Beemsterboer, Blue Island, Ill., Robert J. Mangler, Wilmetta, Ill., William H. Alexander, Chicago, Ill., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NAPOLI, District Judge.

This cause having come on for hearing on the merits of the complaint and answers thereto, the court has considered the evidence, the defendants' motion to dismiss and the plaintiffs' memorandum in opposition thereto, and the arguments of counsel, and, being fully advised in the premises, finds that it has jurisdiction of the parties hereto and the subject matter hereof, finds the facts as follows and states the following conclusions of law thereon:

## FINDINGS OF FACT

1. Plaintiffs are citizens of the United States of America and are residents of the Village of Wilmette, State of Illinois, and were, on April 15, 1969, duly registered and qualified to vote in an election held on April 15, 1969, for the offices of President of the Board of Trustees of the Village of Wilmette, Illinois, three members of the Board of Trustees of the Village of Wilmette, Illinois, and Clerk of the Village of Wilmette, Illinois, and for separate referenda relating to a fire protection tax, police protection tax, street lighting bond issue and adoption of a council-manager form of government.

2. Defendant Kenneth Santee is a resident of the Village of Wilmette, Illinois, and on February 4, 1969, and to and including the date hereof, was and is President of the Board of Trustees of the Village of Wilmette, Illinois. Defendants James A. Schwietert, Thelma B. Simon, Robert McHugh, William C. Orth, James Reichmann and Frank Fernholz are residents of the Village of Wilmette, Illinois, and on February 4, 1969, and to and including the date hereof, were and are members of the Board of Trustees of the Village of Wilmette, Illinois. Defendant Lorene Burghart is a resident of the Village of Wilmette, Illinois, and on February 4, 1969, and to and including the date hereof, was and is Clerk of the Village of Wilmette, Illinois. Defendants J. Kroy Ostergaard, Lemuel H. Tate and Russell B. Joseph are also residents of the Village of Wilmette, Illinois and were purportedly elected to the office of trustee on April 15, 1969.

3. At all Village of Wilmette elections for at least 20 years prior to the election of April 15, 1969, only a single slate of candidates has been set forth on the ballots for the election of Village officers. In each such election, candidates for Village offices had been selected under a caucus system by a non partisan convention. In the past 20 years, the only contest had been a write-in campaign for Village President in 1959. All other Village elections were uncontested. Prior to the election of April 15, 1969, there had been no election for Village officers in which there were two competing political parties which presented competing slates of candidates for election to Village offices.

4. Prior to the Village election of April, 1965, the ordinances authorizing

Village elections provided for the same number of precincts as in general elections. In the April, 1959 and April, 1961 Village elections there were 25 precincts and in the April, 1963 Village election there were 28 precincts.

5. In March, 1965 and March, 1967, the Village Board of Trustees passed ordinances consolidating the number of precincts for the Village elections of April, 1965 and April, 1967, respectively, into six precincts and providing for only five judges at each of such six consolidated precincts. This was done for reasons of economy. The six precincts were located at the following schools in Wilmette, Illinois:

1. Central School
2. St. Francis School
3. Howard Jr. High School
4. Harper School
5. Romona Jr. High School
6. Loyola Academy.

In establishing the boundaries of the six consolidated precincts, the Village Board of Trustees made such precincts comparatively equal in geographical area, but such precincts were substantially unequal in terms of numbers of registered voters included in each precinct. The Village elections of April, 1965 and April, 1967 were both uncontested elections.

6. On February 4, 1969, the defendants, Kenneth Santee, James A. Schwietert, Thelma B. Simon, Robert McHugh, William C. Orth, James Reichmann and Frank Fernholz, acting in their respective official capacities as President and Members of the Board of Trustees of the Village of Wilmette, Illinois adopted a resolution authorizing the combining of the precincts for the forthcoming Village Election on April 15, 1969, from 32 into 6.

7. Prior to February 4, 1969 and since December, 1968, the Village caucus, known as the Harmony Convention, had been actively engaged in interviewing and selecting proposed nominees to be presented to the caucus for adoption of a single slate of candidates to be placed on the ballot of the April 15, 1969 Village election.

8. On or about January 27, 1969, defendant Schwietert advised the Harmony Convention that a second party was being formed and that a hard campaign would be waged. On or about January 30, 1969, a political party opposing the Harmony Convention was organized, known as the United Party. The United Party proposed a slate of candidates headed by defendant Schwietert for Village President. On January 31, 1969 defendant Schwietert and the other candidates signed loyalty oaths indicating their intention to become candidates of the United Party. The formation of the United Party and its intention to make the election a contested election was publicized in the local press, in particular in the February 3, 1969 issue of Wilmette Life, in which the United Party listed its slate of candidates and officers. Prior to February 4, 1969, defendants knew or should have known that the United Party had been organized with the intention of offering the people an alternative to the candidates of the Harmony Convention.

9. On February 4, 1969 the defendant Burghart, acting in her capacity as Village Clerk, recommended to the Board of Trustees that the precincts for the April 15, 1969 election be consolidated from 32 to six in the interests of economy. The suggestion was approved by the Board as above mentioned.

10. On February 7, 1969, the United Party filed with the Village Clerk its nominating petition setting forth a complete slate of candidates to be placed on the ballot for the April 15, 1969 Village election. On February 10, 1969, the Harmony Convention, which designated itself as the 1969 Harmony Party, filed its nominating petition setting forth a complete slate of candidates to be placed on the ballot for the April 15, 1969 Village election.

11. Between February 4, 1969 and March 4, 1969, both parties vigorously campaigned against each other for the forthcoming election. Each party open-

ed a campaign office. Opposing platforms were published. All aspects of the campaign were publicized. The local newspaper referred to controversial and complex issues being raised and there were various charges and countercharges made by the parties. The widespread controversy and interest aroused by this contest was known to all the defendants on and prior to March 4, 1969.

12. On February 18, 1969, Ordinance No. 69-0-6 was presented to the Village Board. Such ordinance provided for the Village election to be held on April 15, 1969, dividing Wilmette into the same six precincts that had been set up in the uncontested elections of April, 1965 and April, 1967. There was no discussion by the Board at this meeting as to the effect of such consolidation.

13. On March 4, 1969, Ordinance No. 69-0-6 was adopted unanimously by the Board, again without discussion. No consideration was given by the Board at this meeting, or at any prior meeting, as to the effect of consolidation of 32 precincts into six precincts in a contested election, and no consideration was given as to the numbers of voters assigned to the respective precincts, the possibility

of inequality of the number of voters in the precincts, the numbers of voters likely to vote at the forthcoming contested election, the number of judges who would be required to serve such precincts in a contested election, or the amount of economy that would be effected by the consolidation.

14. At no time did any of the defendants intend to deprive any person of the right to vote in the April 15, 1969, election.

15. Defendants published a legal notice of special election, which appeared in the classified advertising section of the Wilmette Life issued March 17, 1969. Such notice designated the six precincts, stated the polling place and outlined, by boundaries, the area included in such precinct. The notice did not indicate which regular precincts were consolidated into the six precincts or the number of registered voters that were assigned to each or the inequality of the numbers of voters so assigned or that only one set of election judges would be present at each precinct.

16. The number of registered voters in the respective consolidated precincts were as follows:

| Precinct No. | Location | No. Registered Voters |
|---|---|---|
| 1 | Central School | 3,370 |
| 2 | St. Francis School | 2,563 |
| 3 | Howard Jr. High School | 3,939 |
| 4 | Harper School | 2,928 |
| 5 | Romona Jr. High School | 3,622 |
| 6 | Loyola Academy | 1,539 |
| | Total | 17,961 |

———◆———

The two largest precincts contained roughly two and a half times as many voters as the smallest precinct.

17. In the contested general elections whch preceded the Village election of April 15, 1969, an extremely high percentage of the registered voters of the

Village of Wilmette applied for ballots. In the presidential election of November, 1968, there were 17,674 applications for ballots, representing substantially more than 90% of the registered voters. In the congressional election of November, 1966, there were 15,832 applications

for ballots, representing over 80% of the registered voters of Wilmette.

18. On election day, April 15, 1969, qualified voters who desired to vote were forced to wait unreasonable lengths of time to obtain and cast their ballots in certain of the precincts, particularly at Howard and Romona, as a result of the consolidation of 32 precincts into six precincts, because of the assignment of excessive numbers of registered voters to the precincts, the establishment of inadequate voting facilities and the failure to provide sufficient numbers of judges to service such polling places. In many instances voters at Romona and Howard were required to wait for periods of two to four hours to cast their ballots and were forced to attempt to vote three, four and, in one instance, five times, and were otherwise hindered in their right to cast ballots by reason of the excessively crowded conditions at the polling places and their environs. Substantial traffic jams occurred with the result that police were forced to direct traffic away from the polling place at Romona School. As a result of the action of the defendants in consolidating 32 precincts into six precincts and the assignment of excessive numbers of voters to a single precinct, hundreds of voters were effectively deprived of their right to vote in the April 15, 1969 Village election. Many of those who did succeed in voting had to mark their ballots outside the polling booths.

19. The voting process in each precinct consisted of a required search by the judges through several regular precinct binders to find voter registration information, the completion of a registration application by the voter, the initialing and distribution by the judges to the voters of eight printed ballots and the marking by the voters of such ballots. The actual voting process, exclusive of the time required to reach the judges' table, took from 10 to 20 minutes in each precinct.

20. The number of persons who voted in each of the six precincts on April 15, 1969, and the candidates for whom they voted was as follows:

| Precincts | 1 | 2 | 3 | 4 | 5 | 6 | Total |
|---|---|---|---|---|---|---|---|
| No. Voting | 1,484 | 1,306 | 1,598 | 1,262 | 1,518 | 755 | 7,923 |
| **Village President** | | | | | | | |
| Schwietert (U) | 930 | 737 | 1,036 | 958 | 243 | 244 | 4,148 |
| Webb (H) | 537 | 548 | 540 | 293 | 1,267 | 505 | 3,690 |
| Not Counted | 18 | 21 | 22 | 6 | 8 | 6 | 81 |
| **Village Clerk** | | | | | | | |
| Klaiber (U) | 798 | 612 | 936 | 840 | 203 | 203 | 3,592 |
| Burghart (H) | 670 | 670 | 639 | 413 | 1,304 | 546 | 4,242 |
| Not Counted | 17 | 24 | 23 | 9 | 11 | 6 | 90 |
| **Village Trustees** | | | | | | | |
| Tate (U) | 919 | 748 | 1,015 | 955 | 234 | 233 | 4,104 |
| Joseph (U) | 899 | 725 | 1,016 | 915 | 231 | 233 | 4,019 |
| Ostergaard (U) | 890 | 716 | 1,014 | 921 | 220 | 228 | 3,989 |
| Fisher (H) | 573 | 571 | 572 | 310 | 1,282 | 523 | 3,831 |
| Bonynge (H) | 568 | 546 | 558 | 331 | 1,276 | 510 | 3,789 |
| Gunn (H) | 548 | 542 | 557 | 306 | 1,284 | 513 | 3,750 |
| Not Counted | 57 | 70 | 62 | 48 | 27 | 26 | 290 |

[redacted]

21. In the Village election of April, 1969, 7923 voters, or 44% of the registered voters, succeeded in voting. The record also contains the affidavits of 397 named voters who attempted to vote in said election and who were unable to do so.

22. The total vote cast number would have been substantially less had the judges insisted on following the requirements of the Illinois Election Code, Ch. 46, Sec. 17–11, which requires that voters utilize voting booths and which permits voters at least five minutes in the voting booth.

23. The overcrowded condition in certain of the consolidated precincts on April 15, 1969, resulted in the effective deprivation of plaintiffs' right to vote in the Village election on such date and was a consequence of the consolidation by the Village Board of 32 regular precincts into six consolidated and unequal precincts and of the Village Board's failure to provide adequate and equal voting facilities for all of the qualified voters who desired to cast their ballot on such date.

24. The Board knew or should have known on or prior to March 4, 1969

(a) that the contested election of April 15, 1969 would bring great numbers of Wilmette voters to the polls;

(b) that six consolidated precincts, each manned by only one board of five election judges, would be wholly inadequate for the thousands of voters that could be expected;

(c) that the inadequacy of voting facilities would unduly hinder and delay such voters in the exercise of their franchise and would effectively deprive hundreds of voters of their right to vote;

(d) that the precincts were grossly unequal in the number of registered voters which they respectively contained;

(e) that such inequality would seriously prejudice and discriminate against voters residing in the more populous precincts; and

(f) that the consequence of such discrimination, coupled with such inadequacy of voting facilities, would effectively deprive hundreds of voters of their right to vote.

25. In view of the substantial numbers of voters who were unable to cast their ballots the inability of such voters to cast their votes had the effect of either changing the election results or rendering such results doubtful.

26. The election challenged in this action, which involved the election of four members of a seven-man board, involved the control of the Village Board of the Village of Wilmette for the next four years, and to permit persons purportedly elected at an invalid election to exercise power of government of the Village of Wilmette would constitute irreparable injury to plaintiffs and other citizens of the Village of Wilmette similarly situated, for which they have no adequate remedy at law.

27. The cost of conducting a second election with adequate and substantially equal voting facilities is not likely to exceed $5,000.

## CONCLUSIONS OF LAW

1. This action arises under 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution, of which this court has jurisdiction under 28 U.S.C. § 1343.

2. This action is properly brought by the plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all other registered and qualified voters resident in the Village of Wilmette, Illinois, similarly situated.

3. 42 U.S.C. § 1983, provides that every person who, under color of any statute or ordinance of any State, subjects or causes to be subjected any citizen of the United States to the deprivation of any rights, privileges or immunities secured by the United States Constitution shall be liable to the party injured in an action of law, suit in equity or other proper proceeding in redress.

4. The rights, privileges and immunities encompassed by 42 U.S.C. § 1983, include the right to equal protection of the laws as well as the right to due process of law.[1]

5. In order to maintain an action under 42 U.S.C. § 1983, it is not necessary to allege or prove that the defendants intended to deprive plaintiffs of their constitutional rights or that they acted wilfully, purposefully or in pursuance of a conspiracy. It is sufficient to establish that the deprivation of constitutional rights or privileges was the natural consequence of the actions of defendants acting under color of law, irrespective of whether such consequence was intended.[2]

6. In conducting the election of April 15, 1969, in reducing the number of precincts from 32 to six, in providing for precincts grossly unequal in number of registered voters, and in failing to provide sufficient election judges or adequate voting facilities, defendants acted under color of the statutes of the State of Illinois and the ordinances of the Village of Wilmette within the meaning of 42 U.S.C. § 1983.

7. It was the duty of defendants as the responsible officers and trustees of the Village of Wilmette to provide adequate and substantially equal voting facilities to the citizens of Wilmette at the election of April 15, 1969. Defendants failed to perform such duties.[3]

8. As a consequence of the failure of defendants to provide adequate voting facilities, plaintiffs and those similarly situated were hindered, delayed and effectively deprived of their rights secured by the Constitution of the United States to vote in the April 15, 1969 election.

9. As a consequence of the failure of defendants to provide substantially equal voting facilities, plaintiffs and those similarly situated were discriminated against in the exercise of their franchise and were denied the right secured by the United States Constitution to equal protection of the laws.

10. United States citizens do have a right guaranteed by the Constitution to a reasonable opportunity to vote in local elections, that is, to be given reasonable access to the voting place, to be able to vote within a reasonable time and in a private and enclosed space.

11. The legal notice published in the classified section of Wilmette Life on March 17, 1969 was not intended and did not put plaintiffs or any persons similarly situated on notice of the number of voters in the respective consolidated precincts or of the number of election judges assigned thereto or the inadequacy of voting facilities or of the gross inequality between the respective precincts and the number of voters assigned thereto. Defendants have failed to prove the defense of laches.

12. The defendants holding over as President of the Village Board, members of the Board of Trustees and Village Clerk, whose terms would have expired had the purported winners of the election of April 15, 1969 been elected and qualified, are vested with full power and authority to continue to act as such officers until their successors are elected and qualified, and until such election and qualification the official acts of said defendants subsequent to April 15, 1969 are and will be as valid and binding as their acts prior to such date.[4] It is therefore not necessary for the conduct of any Village business that the candidates purportedly elected at the

1. Adams v. City of Park Ridge, 293 F.2d 585 (7th Cir. 1961) ; Huey v. Barloga, D.C., 277 F.Supp. 864.

2. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Joseph v. Rowlen, 402 F.2d 367, 369 (7th Cir. 1968).

3. It may be noted that the standard set by the Illinois legislature for creating equal and adequate voting facilities is 500 voters except in uncontested elections. Ill.Rev.Stat.1969, Ch. 46, § 11–2.

4. Ill.Rev.Stat.1969, Ch. 24, § 3–5–2.

invalid election of April 15, 1969 be permitted to hold office prior to the holding of a fair, proper and valid election.

13. The injury suffered by plaintiffs and other citizens similarly situated in permitting persons not validly elected to assume control of the government of the Village of Wilmette would far outweigh the cost of conducting a fair, proper and valid election.

14. The case at bar was not and could not have been adjudicated by an order entered August 1, 1969 in the case of Leve v. Village of Wilmette, No. 69 CO 767, in the Circuit Court of Cook County, Illinois, ruling upon cross motions for summary judgment; in that order the Circuit Court, without findings, opinion or recommendations, granted the defendants' motion and denied the plaintiffs' motion. The Leve case had been filed as an election contest under a special Illinois statutory proceeding and at the time of the motions for summary judgment the only issue before the Illinois court was a claim under Article VII, § 1, of the Illinois Constitution.[5] The defendants in the Illinois case had challenged this claim on jurisdictional as well as substantive grounds; the Illinois record gives no clue as to the reason for the state court's decision; under no circumstances could that decision have determined the rights of the plaintiffs in the case at bar under the Constitution of the United States [6] and 42 U.S.C., § 1983.

## JUDGMENT

This cause having come on for trial and the court having heard the evidence and having filed herein its findings of fact and conclusions of law,

It is ordered, adjudged and decreed:

A. That the defendants' motions to dismiss the complaint, for judgment on the pleadings and for a directed verdict are hereby denied.

B. That the purported election of candidates on April 15, 1969, for the offices of President of the Board of Trustees of the Village of Wilmette, Illinois, three members of the Board of Trustees of the Village of Wilmette, Illinois, and Clerk of the Village of Wilmette, Illinois, be and it is hereby declared to be invalid, null, void and of no effect.

C. That the defendants, their officers, agents, servants, employees and attorneys and those persons in active concert or participation with them, be and they are hereby restrained and permanently enjoined from swearing in, or causing, suffering or permitting to be sworn in, the defendant James A. Schwietert, as President of the Board of Trustees of Wilmette, Illinois, and defendants J. Kroy Ostergaard, Lemuel H. Tate and Russell B. Joseph, as members of the Board of Trustees of Wilmette, Illinois, and defendant Lorene Burghart as Clerk of the Village of Wilmette, Illinois, pursuant to the said invalid election of April 15, 1969.

D. That defendants Kenneth Santee, James A. Schwietert, Thelma B. Simon, Robert McHugh, William C. Orth, James Reichmann, Frank Fernholz and Lorene Burghart are hereby ordered and directed to cause to be held a general election in and for the Village of Wilmette, Illinois, at the earliest possible date, for the purpose of electing a President of the Board of Trustees of said Village, three members of the Board of Trustees of said Village and a Clerk of said Village; and for the purpose of holding said general election to divide the Village of Wilmette into the same 32 precincts as used in the General Election of November 5, 1968; and to select and designate such judges of said election as may be necessary and appropriate.

E. That plaintiffs have and recover their costs.

---

5. On May 6, 1969, the state court entered an order expressly dismissing all claims except the Illinois state constitutional claim.

6. E. g., E. I. DuPont de Nemours and Co. v. Union Carbide Corp., 7 Cir., 369 F.2d 242 (1966).