**Maryjean Michelle ANDREWS et al., Plaintiffs,**

v.

**Joan HYDE et al., Defendants.**

**Civ. No. B-80-5.**

United States District Court, D. Connecticut.

Nov. 25, 1980.

---

Emanuel Margolis, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, Conn., for plaintiffs.

Daniel D. Peck, Goldstein & Peck, P.C., Bridgeport, Conn., for defendant H. Lobsenz.

,MEMORANDUM OF DECISION

DALY, District Judge.

Plaintiffs bring to this Court a claim that their right to vote in the November 1979 election for the Westport Board of Education was impaired by a misunderstanding of the town charter so that they were, in effect, disenfranchised, and prayers that the Court enjoin the Board of Education from acting and order a new election.

The following statement of facts is distilled from evidence offered at a two day court trial. The November 1979 election for the Board of Education attracted, even before the event, the interest of many Westport voters because of the unusual circumstance that an incumbent member of the Board, a registered Republican, was running as a petition candidate.[1] Her candidacy prompted some persons to question how the minority representation provision of the town charter would apply if she were

---

1. Both Joan Hyde, the Town Clerk, and Nicholas W. Thiemann, the Chief Moderator of the election, testified that petition candidacies are infrequent in Westport. Mr. Thiemann also stated that, to his knowledge, a petition candidate had never been successful prior to November, 1979. Tr. ——, October 16, 1980.

elected. The town charter states at chapter 5, § 1(b),

> [n]o political party shall *nominate* more candidates than the number which, if elected, will give that party a bare majority of the members of the board. No elector shall vote for more candidates than the largest number that any one political party may nominate (emphasis added).

Having received several inquiries and pursuant to her statutory duties, the Town Clerk gave her opinion that the petition candidate would retain her Republican status, even though not renominated by that party, and that the charter would not permit more than two Republicans to be elected since there was already one Republican on the Board. If more than two were elected, the Republican party would have more than a three member representation which, the Town Clerk believed, was the maximum permitted by the charter. According to her reading of the charter, a Democrat would have to be elected to fill one of the three vacancies. This interpretation of the charter was concurred in by the assistant town attorney[2] and two members of the Secretary of State's Election Commission, and was published in the *Westport News* and discussed at meetings sponsored by, *inter alia*, the League of Women Voters and candidates.

After the ballots were counted the Town Clerk and Chief Moderator certified as winners the two candidates with the highest number of votes, one a Republican nominee and the other the petition candidate, and the candidate who placed fourth, a Democrat. Herbert Lobsenz, a Republican who had received the third highest number of votes, was not certified as a winner. Unhappy with that result, Mr. Lobsenz sought a writ of mandamus and court certification in the Connecticut Superior Court. Correcting the prevailing view of the charter's import, the Superior Court found that Mr. Lobsenz had been elected to the Board of Education.[3] On appeal, the Connecticut Supreme Court affirmed, saying of chapter 5, § 1(b) that the petition candidate

> did not offend this provision because she was not nominated by the Republican party. With respect to the charter, her Republican registration is of no moment because the charter does not purport to limit directly the number of board members who belong to any one political party. It only controls the number of party nominations.[4]

The Westport Board of Education is now comprised of four Republicans, three of them elected in November 1979, and one Democrat.

Plaintiffs characterize the state court ruling setting forth the proper reading of the town charter as a "post-facto change in fundamental election rules" with the result that "numerous electors have been disenfranchised or have had their ballot debased or diluted,"[5] and suggest that it falls under the rubic of a quartet of cases, *Ury v. Santee*, 303 F.Supp. 119 (N.D.Ill.1969), *Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir. 1970), *Williams v. Sclafani*, 444 F.Supp. 906 (S.D. N.Y.1978), and *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978) in which other federal courts cured deprivations of rights with equitable relief. Thus, theirs is a claim under the due process clause of the Fourteenth Amendment to the United States Constitution, and under 42 U.S.C. § 1983.[6] In this

---

2. The assistant town attorney drafted a written opinion in agreement with the Town Clerk's interpretation of the charter. Tr. ——, October 16, 1980.

3. *Lobsenz v. Davidoff, et al*, No. CV 79–0181400S, Connecticut Superior Court, (Ford, J.) November 26, 1979.

4. *Lobsenz v. Davidoff, et al*, —— Conn. —— at ——–——, (1980) 42 Conn.L.J.No. 7 (August 12,

5. Plaintiffs Trial and Post-Trial Brief at 3, 13.

6. The scope of plaintiffs' claims has been reduced from that initially pleaded in the complaint for they have abandoned an equal protection claim. In order to succeed on that basis, they would have been required to show purposeful discrimination by state officials, *Briscoe v. Kusper*, 435 F.2d 1046, 1052, which plaintiffs concede would be impossible.

Court's view, however, there occurred neither a deprivation of a constitutionally protected interest nor a change in rules. The evidence shows, at best, honest misunderstanding and disappointed expectations, and consequently states no claim entitling plaintiffs to relief.

In each of the cases on which plaintiffs rely relief was granted to redress constitutional injury to a voter who was denied the right to vote or to a candidate who was denied access to the ballot. A brief review of those cases makes clear the distinction between them and the case at bar. In *Briscoe v. Kusper, supra,* candidates whose names were removed from the ballot and voters who were then unable to vote for them sued, and the federal court granted injunctive relief upon a finding that both the candidates' and voters' concomitant rights would be lost otherwise. In *Ury v. Santee, supra,* inadequate voting facilities caused such overcrowding that hundreds of voters were turned away from the polls on election day. On the basis of affidavits of persons who had unsuccessfully attempted to vote, the court found a deprivation of their right to vote, and ordered a new election. In *Williams v. Sclafani, supra,* the injury enjoined was a denial of a candidate's right of access to the ballot, which injury would have occurred if the state court had invalidated nominating petitions completed in accordance with advice from the Board of Elections. Finally in *Griffin*

*v. Burns, supra,* voters lost their franchise when their absentee and shut-in ballots were not counted.

█ In critical contrast to the precedent cited, and despite plaintiffs' advocacy, the facts of this case show no disenfranchisement or lack of access to the ballot. There was no testimony that any Westport voter was unaware that he was entitled to vote for two candidates,[7] or unable for any reason to cast both of them, or that any ballot cast was not properly counted. Of the fourteen witnesses who testified as to how they voted, seven cast both available votes,[8] four used only one vote in a "bullet voting" strategy,[9] and one could not remember how he voted.[10] Those who bullet voted chose that strategy in the belief that a single vote bettered the chances that the candidate would win,[11] not because of misunderstanding that two votes were available.[12]

The evidence which plaintiffs attempt to mount into a constitutional claim shows that Westport voters knew of the erroneous charter interpretation, and had it in mind on November 6 at the polls. Bullet voters testified that they would have used their second vote if they did not feel assured that at least one Democrat would be elected.[13] Other voters testified that they cast both ballots, but not both for candidates they most wanted elected, since they believed another candidate would be elected, even

7. Although there were three vacancies to be filled, a voter could cast only two ballots because the town charter, c.5, § 1(b), provided "[n]o elector shall vote for more candidates than the largest number that any one political party may nominate", which, for this election, was two.

8. Witnesses who cast two votes were: Nicholas W. Thiemann; Richard Leonard; Rita Weisskoff; Barbara Butler; Lorna Christophersen; Donna Wasik; Doris Jacoby. Tr. ——, October 16 and 17, 1980.

9. Witnesses who cast bullet votes were: Kathreen Brandt; Vaughn Keller; Patricia Porio; Susan Felsenthal. Not each of those votes was for the same candidate. Tr. ——, October 16 and 17, 1980.

10. Jerry Davidoff remembered that he voted for himself, but not whether or not he cast his second ballot. Tr. ——, October 16, 1980.

11. One witness, Kathreen Brandt, testified that bullet voting appeared to be a successful strategy at the time of the election, but that in retrospect it made no sense. Tr. ——, October 16, 1980.

12. Patricia Porio and Susan Felsenthal, bullet voters, both said they knew the second vote was available. Tr. ——, October 17, 1980.

13. Kathreen Brandt, Patricia Porio and Susan Felsenthal, bullet voters, wanted a Democrat elected, although not all of them testified they would have voted for the same Democratic candidate. Tr. ——, October 16 and 17, 1980.

without the help of their votes.[14] Also, three voters testified that their voting was not influenced by the mistaken interpretation of the charter, but that their decision not to campaign for a particular Democrat was.[15] The Court is not deaf to plaintiffs' claims that they, and others like them,[16] participated in the election with faith that at least one Democrat would be elected, so as to give the Democrats two members on the Board, and that they were disappointed to find their faith had no basis in the words of the town charter. Nevertheless, plaintiffs have not shown injury of constitutional dimension, and, consequently, are not entitled to the extraordinary relief [17] they seek.[18] In so holding, this Court echoes the words of another court in *Rudisill v. Flynn*, 470 F.Supp. 1269 (N.D.Ill.1979): "they [plaintiffs] have not cited and this court's research has not found any precedent for a holding that false statements of [public officials] on a public issue violated the due process rights of persons whose votes were influenced by those statements". 470 F.Supp. 1269, 1275.

■ The second flaw in plaintiffs' case, in addition to the lack of significant injury

to a constitutional right as discussed above, is the failure to sustain the allegation that a "post-facto change in fundamental election rules" occurred. The state court, in its decision complained of herein, applied the town charter to the facts before it, but did not add to, detract from, or amend its provisions. Furthermore, the state court opinion should not have startled the Westport electorate, for the town charter is a public document, available to all,[19] and the pertinent language is clear.[20] Assuming there was reliance on the erroneous interpretation, that reliance can not be said to be justifiable. *See Rudisill v. Flynn*, 470 F.Supp. 1269, 1275 where that court found plaintiffs' omission of specific allegations that they were denied access to information a basis for holding that deception practiced on them was traceable in part to their failure to inform themselves.[21] Neither can reliance on a purported past practice be justifiable, because there was no practice involving the novel situation of a successful petition candidate.[22]

Again, the authority on which plaintiffs rely is radically distinct from the case at bar, for each of the cited cases involved a

**14.** These witnesses were: Nicholas Thiemann; Richard Leonard; Barbara Butler; Kenneth Brummel; Doris Jacoby. Tr. ——, October 16 and 17, 1980.

**15.** Rita Weisskoff, Vaughn Keller, and Donna Wasik so testified. Tr. ——, October 16 and 17, 1980.

**16.** Because the trial was to the Court, hearsay evidence was more freely admitted than it might have been had the trial been before a jury. Witnesses were permitted to testify to conversations with other townspeople not before the Court.

**17.** A federal court should exercise its power to invalidate a state election cautiously so as to avoid being "thrust into the details of virtually every election" and to maintain federal-state comity. *Powell v. Power*, 436 F.2d 84, 86 (2nd Cir. 1970).

**18.** Plaintiffs' case survived a pre-trial motion to dismiss under Fed.R.Civ.P. 12(b)(6) upon reasoning that plaintiffs should not prematurely be denied the opportunity to make a showing that the misconduct of which they complain is sufficiently egregious to warrant a new election, or that the outcome of the election was affected

by the alleged unfairness. *See* Ruling on Motion to Dismiss, September 16, 1980, at 10, 12.

**19.** Barbara Butler, President of the League of Women Voters, testified a copy of the charter was available at town hall, and Kathreen Brandt, a League Member, testified that the League had copies. Tr. ——, October 16 and 17, 1980.

**20.** "No political party shall *nominate* more candidates than the number which, if elected, will give that party a bare majority of the members of the board" (emphasis added).

**21.** In relying on *Rudisill v. Flynn* which involved allegations of legislators' deception, the Court does not mean to suggest that any town official intended to mislead or deceive Westport voters.

**22.** As Nicholas Thiemann testified, restricting party representation on the Board to three members where one of them ran on a separate voting line could not be consistent with tradition because a petition candidate had never before been successful. Tr. ——, October 16, 1980.

change made without due process. In *Briscoe v. Kusper, supra,* the city board of election commissioners adopted new rules for nominating petitions without notifying candidates who then submitted petitions conforming to earlier rules. In *Williams v. Sclafani, supra,* a candidate relied on the past practices and advice of the city board in filling out his designating petition, but a change occurred when the state court interpreted a new registration statute to have requirements different than those of which the board had advised the candidate. In *Griffin v. Burns, supra,* voters used, in accordance with a long standing practice, absentee and shut-in ballots pursuant to a state statute which did not, on its face, prohibit such ballots. The state court later invalidated those ballots, and the federal court found a change in practice which lacked due process. No such change was effected here by the state court's interpretation of the Westport town charter, and so the cited cases provide no support for plaintiffs' claims.

 Notwithstanding the foregoing conclusions which, sufficient by themselves, dispose of plaintiffs' claims, the Court notes an additional reason for its holding. Commentators have suggested that judicial reluctance in invalidating elections is appropriate, particularly when officials acted in good faith or when "forcing a rerun election would be an academic exercise because of the lack of causal connection between the illegality and the election results," Starr, *Federal Judicial Invalidation as a Remedy for Irregularities in State Elections,* 49 N.Y.U.L. Rev. 1092, 1122–1123 (1974), and this Court agrees with that suggestion. There is no intimation in the evidence that town officials acted with anything other than good faith. On a causal connection, only non-expert opinion evidence was offered. No statistical projections or other expert evidence was produc-

ed, despite the Court's suggestions that it would be helpful. Although opinion and hearsay evidence was freely admitted at trial,[23] it is not entitled to great weight because of its inherent unreliability, *Developments in the Law—Elections,* 88 Harv.L. Rev. 1111, 1321–1322 (1975), and so does not persuade the Court that a new election would put plaintiffs in the position they now claim they would have been in but for the erroneous interpretation. The difficulty of eliciting reliable testimony on how one might have voted but for reliance on a mis-interpretation of the town charter was illustrated several times at trial when witnesses stated that their preferences for candidates might have been influenced by events that transpired between November 6, 1979 and the time of trial.[24]

 For all the foregoing reasons, the Court finds that plaintiffs are not entitled to relief.[25]

It is SO ORDERED.

---

**23.** See note 16, *supra.*

**24.** Kathreen Brandt, Barbara Butler and Donna Wasik, so testified. Tr. ——, October 16 and 17, 1980.

**25.** Three defendants filed answers to plaintiffs' complaint, sufficiently joining issue for this Court to rule on the merits. Plaintiffs will now be barred from pursuing their claims against the nine non-answering defendants by the principles of *res judicata.*