**Frank V. PONTERIO, Plaintiff,**

**v.**

**Edward I. KOCH, both individually and as Mayor of the City of New York, the City of New York, Carol Bellamy, both individually and as President of the Council of the City of New York, Thomas Cuite, both individually and as Majority Leader and Vice Chairman of the Committee on Rules, Privileges, and Elections of the Council of the City of New York, the Council of the City of New York, Melvin Markus, both individually and as Chairman of the Council Redistricting Commission, and the Board of Elections in the City of New York, Defendants.**

**No. 83 CV 206 (ERN).**

United States District Court, E.D. New York.

May 22, 1984.

Frank V. Ponterio, Staten Island, N.Y., plaintiff pro se.

Frederick A.O. Schwarz, Jr., Corporation Counsel, City of New York, for defendants by Stephen P. Kramer, Susan R. Rosenberg, James F.X. Hiler, New York City.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1343 to seek redress for an alleged violation of 42 U.S.C. § 1983.[1] According to the complaint, plaintiff, relying on the schedule published by the Board of Elections in June 1981, qualified to appear on the ballot in the Demo-

1981), *cert. denied,* 455 U.S. 940, 102 S.Ct. 1432, 71 L.Ed.2d 651 (1982).

**1.** The complaint also cites 42 U.S.C. § 1981; however, this statute is inapplicable because the complaint alleges no racial discrimination. *See Runyon v. McCrary,* 427 U.S. 160, 168, 96 S.Ct. 2586, 2593, 49 L.Ed.2d 415 (1976).

cratic party primary for New York City Council Member, 35th District. The Board of Elections had set the primary election for September 10, 1981, and the general election for November 3, 1981, but, as explained below, neither event occurred.

The counties of the Bronx, New York, and Kings in the City of New York are subject to the preclearance provisions of section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973, *et seq.* The statute requires officials in those counties to obtain approval of any redistricting plan from either the United States District Court for the District of Columbia or the Attorney General of the United States.

Changes in population reflected in the census of 1980 had necessitated councilmanic district reapportionment throughout the City and in compliance with local law, the City Council adopted a proposed plan which the Mayor signed into law on June 6, 1981. The complaint does not state exactly when defendants submitted the plan to the Attorney General; however, there is no dispute that the date was June 12, 1981, and that defendants requested expedited review. On August 4, 1981, the Department of Justice requested additional data, the last of which was furnished on September 21, 1981. Prior thereto, however, on September 8, 1981, a federal court, acting on a citizens' complaint, enjoined the holding of any election pursuant to the proposed plan until the provisions of the Voting Rights Act had been satisfied. *Herron v. Koch,* 523 F.Supp. 167 (S.D.N.Y.; E.D.N.Y.1981) (three-judge court) (*per curiam*) (consolidated cases), *application for stay denied,* 453 U.S. 946, 102 S.Ct. 893, 69 L.Ed.2d 1032 (1981).

The date of September 21, 1981, was also significant because, under the applicable regulations, the Attorney General's 60-day period for considering the proposed plan began to run anew. On October 27, 1981, the Attorney General rejected the proposed plan. In response, the Board of Elections cancelled the November 3, 1981, councilmanic election. Primary elections for City Council were not held again until September 1982, at which time plaintiff was unsuccessful in his bid for the Democratic nomination.

Essentially, plaintiff charges that defendants' negligence and carelessness deprived him of his civil right to run for public office in the 1981 primary election. Specifically, he accuses defendants of failing both to seek and to obtain preclearance of the redistricting plan on a timely basis.

The case is before the Court upon defendants' motion for judgment on the pleadings. In assessing the sufficiency of the complaint's allegations, the Court must rely upon the pertinent language of 42 U.S.C. § 1983, which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Defendants contend that the complaint fails to allege the deprivation of a federally protected right.

The Supreme Court has instructed that

"[t]he protection extended to citizens of the United States by the privileges and immunities clause includes those rights and privileges which, under the laws and Constitution of the United States, are incident to citizenship of the United States, but does not include rights pertaining to state citizenship and derived solely from the relationship of the citizen and his state established by state law. *The right to become a candidate for state office,* like the right to vote for the election of state officers, is a right or privilege of state citizenship, not of national citizenship which alone is protected by the privileges and immunities clause.

"More than forty years ago this Court determined that an unlawful denial by state action of a right to state political

office is not a denial of a right of property or of liberty secured by the due process clause. Only once since has this Court had occasion to consider the question and it then reaffirmed that conclusion, as we reaffirm it now."

*Snowden v. Hughes,* 321 U.S. 1, 6–7, 64 S.Ct. 397, 400, 88 L.Ed. 497 (1944) (emphasis added; citations omitted); *accord Gruenburg v. Kavanagh,* 413 F.Supp. 1132, 1135 (E.D.Mich.1976); *Vandross v. Ellisor,* 347 F.Supp. 197, 201–02 (D.S.Car. 1972); *Heiser v. Rhodes,* 305 F.Supp. 269, 272 (S.D.Ohio 1969) (three-judge court) ("Secondly—it has been consistently held that, while a voter in a given case may have a right to require a 'one-man, one-vote' principle election, nonetheless a particular individual may not successfully assert any federally protected right to be a candidate for a state political office.").

Later authorities limit the potentially broad reach of *Snowden v. Hughes* so as not to preclude consideration of asserted violations of due process of law as guaranteed by the Fourteenth Amendment. *Duncan v. Poythress,* 657 F.2d 691, 704 (5th Cir.1981), *cert. dismissed,* 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982); *Briscoe v. Kusper,* 435 F.2d 1046, 1052–53 (7th Cir.1970). Unlike *Briscoe* and *Egan v. City of Aurora,* 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1961) *(per curiam),* the instant complaint does not implicate freedoms or liberties protected by the First Amendment. *See Wright v. Mahan,* 478 F.Supp. 468, 470–71 (E.D.Va.1979), *aff'd,* 620 F.2d 296 (4th Cir.1980). Fairly read, however, its allegations charge, by way of implicit conclusion, that defendants' actions denied plaintiff due process of law.

The concept of liberty in the due process clause of the Fourteenth Amendment provides candidates with a limited right of access to the ballot. *Williams v. Sclafani,* 444 F.Supp. 906, 911 (S.D.N.Y. 1978), *aff'd,* 580 F.2d 1046 (2d Cir.1978). A claimed deprivation of this right is subject to the same test of constitutional scrutiny as an asserted deprivation of the right to vote. *Moldonado v. Rodriguez,* 523 F.Supp. 177, 180 (S.D.N.Y.1981). These general statements of the law derive from factual settings unlike this case. *See, e.g., Griffin v. Burns,* 570 F.2d 1065, 1078 (1st Cir.1978). Here, no election was held and, consequently, nobody appeared on the ballot; or, in other words, all persons, who otherwise qualified, were denied access to the ballot.[2] This distinction properly focuses the Court's inquiry upon fundamental fairness as urged in plaintiff's brief at 10. *See Hendon v. North Carolina State Bd. of Elections,* 710 F.2d 177, 182 (4th Cir. 1983); *Griffin v. Burns, supra,* 570 F.2d at 1077–78. The labeling of defendants' actions as tortious, however, does not *ipso*

---

**2.** The facts are not in dispute, and as a result, the record contains any of several causes of the election's cancellation. The complaint traces the cancellation to defendants' alleged failure to obtain preclearance of the proposed redistricting plan, ¶ 22, which in turn stems from having submitted the plan for preclearance in an untimely fashion. Paragraphs 23–26 of the complaint aver that, given their knowledge of the Attorney General's 60-day consideration period, "Defendants knew or should have known that it was patently impossible on the schedule established by defendants to obtain preclearance of the proposed council redistricting plan prior to the scheduled primary election on Sept. 10, 1981 or even prior to the scheduled general election on Nov. 3, 1981." Par. 24.

To the contrary, however, defendants requested the expedited review available under the law and apparently received it, because on August 4, 1981 the Dept. of Justice requested additional material. The City did not furnish all the supplementary material until September 21, 1981, and from this event, plaintiff avers in ¶ 23 of the complaint that, "In reckless disregard for plaintiff's civil rights, defendants proceeded on a schedule to obtain preclearance which provided for completion of the submission of information required by the Attorney General by Sept. 21, 1981, eleven days after the scheduled primary election, ..." This allegation only implicitly challenges the validity of the redistricting plan and through 20/20 hindsight, assumes the plan was invalid. The complaint does not plead the plan and does not allege its invalidity. Thus it fails to identify the source of the defendants' alleged nonfeasance, malfeasance, misfeasance, negligence, carelessness, and reckless disregard for plaintiff's civil rights other than to imply that an earlier timetable for obtaining approval should have been established. *See Herron v. Koch,* 523 F.Supp. at 174–75 (discussion therein).

*facto* taint the election process nor equate their actions with fundamental unfairness. Due process does not require defendants to be guarantors or sureties for the risks attendant to the submission of a redistricting plan for preclearance. No matter what the proposed plan contained, approval might not have been forthcoming. Consequently, to allege the deprivation of due process, at least in this context, plaintiff must plead that defendants submitted the plan on June 12, 1981, expecting that it would not be approved in time for the primary election they had scheduled for September 10, 1981.

The Court derives this requirement from the discussion in *Williams v. Sclafani,* 444 F.Supp. at 911–14, where several cases, including *Briscoe v. Kusper, supra,* and *Griffin v. Burns, supra,* were analyzed. In those cases, as in *Williams,* the elections officials had misled the plaintiffs concerning the procedures applicable to their respective elections. *See Andrews v. Hyde,* 504 F.Supp. 891, 895–96 (D.Conn. 1980)(discussion therein); *see also Eccles v. Gargiulo,* 497 F.Supp. 419 (E.D.N.Y.1980). In this case, there is no equivalent misrepresentation that the proposed plan would be acceptable to the Attorney General. Indeed, in view of the attendant publicity, all candidates were chargeable with notice that any election was necessarily tentative, *i.e.,* subject to the plan's approval under the preclearance procedure.

Moreover, while the plan was pending, defendants sought to preserve the election timetable. They vigorously opposed the voters who persuaded a federal court to enjoin the election. Thereafter, the State Legislature changed the primary date to September 22, 1981. Most significantly, the Attorney General's 60 days to review the June 12, 1981, submission initially expired on August 11, 1981, well before the scheduled primary election date of September 10, 1981.

For the foregoing reasons, the Court finds that plaintiff has failed to state a claim entitling him to relief under 42 U.S.C. § 1983. Accordingly, defendants' motion for judgment on the pleadings is granted, and the complaint is ordered dismissed.

SO ORDERED.