628 N.W.2d 336 (2001)
2001 SD 62
In the Matter of the ELECTION CONTEST AS TO WATERTOWN SPECIAL REFERENDUM ELECTION OF OCTOBER 26, 1999 Pertaining To Referred Ballot Issues No. 1 and 2.
No. 21595.
Supreme Court of South Dakota.
Argued April 24, 2001.
Decided May 23, 2001.
*337 Robert L. Spears, Watertown, SD, Attorney for appellants Porisch, Andrea, and Fischer.
Thomas J. Linngren of Green, Schulz, Roby, Oviatt, Cummings & Linngren, Watertown, SD, Attorneys for appellee Prairie Lakes Hospital, Sioux Valley Health Care and Bartron Clinic.
Roy A. Wise of Richardson, Groseclose, Wyly, Wise & Sauck, Aberdeen, SD, Attorneys for appellees Watertown Mayor, City Finance Officer, and City Council.
AMUNDSON, Justice.
[¶ 1.] Local residents of Watertown filed an election contest based on allegations of perceived voting irregularities. The trial court held the election valid and declined to order a new election. We affirm.

FACTS
[¶ 2.] On August 2, 1999, the Watertown City Council approved an ordinance, which would rezone a portion of the city from residential to commercial. The City Council also passed a resolution, which would vacate a portion of a city street. The ordinance and resolution were passed at the request of Prairie Lakes Health Care System in order for it to expand its main campus. Certain local residents (Contestants) objected to the changes and sought to bring the rezoning issues to a special election. After obtaining the requisite *338 number of signatures, Contestants were able to demand a special referendum election on the two zoning changes.
[¶ 3.] A special election took place on October 26, 1999, and was held at the Civic Arena. The voters approved both referendums. After a recount, final numbers showed that the resolution was approved 1,739 to 1,679, a difference of 60 votes, and the ordinance was approved 1,711 to 1,677, a difference of 34 votes.
[¶ 4.] Contestants brought suit contesting the election results under SDCL ch. 12-22. After hearing Contestants' allegations of voting irregularities, including affidavits from 104 potential voters who did not vote because of long lines, the circuit court found that the election "resulted in a free and fair expression of the will of the voters," and denied Contestants a new election. Contestants appeal, raising the follow issue:
Whether Contestants met their burden of proof showing that the special election was not the free and fair expression of the voters based on the manner in which it was conducted.

STANDARD OF REVIEW
[¶ 5.] "In an election contest this court must determine whether there is sufficient evidence to support the trial court's findings of fact and conclusions of law and can only reverse the trial court's judgment if it is clearly erroneous." Larson v. Locken, 262 N.W.2d 752, 755 (S.D. 1978). Thus, we review only the sufficiency of the trial court's findings and whether those findings are in clear error.

DECISION
[¶ 6.] The thrust of Contestants' argument is that the lines leading to the voting registration table were too long and there was inadequate parking. The trial court heard evidence that some potential voters had waited to vote between forty-five minutes and an hour and a half. The court also heard testimony that some potential voters had gone to the voting area a few times during the day only to find the voting lines to be same or of greater length. The record reflects that those in line at the 7 p.m. polling closing time were allowed to vote, and after 7 p.m. over four hundred residents voted until the last in line voted at approximately 8:30 p.m. The record also reflects that some potential voters had to park a block and a half from the polling area.
[¶ 7.] The purpose of an election contest is to challenge "the election process itself." Larson, 262 N.W.2d at 753, n. 1. The basic question in an election contest is whether the election, despite irregularities, resulted in a free and fair expression of the will of the voters. Id. (citing Green v. Ind. Consol. School Dist. No. 1, 252 Minn. 36, 89 N.W.2d 12 (Minn 1958)). Therefore, Contestants must show not only voting irregularities, but also show those irregularities to be so egregious that the will of the voters was suppressed.
[¶ 8.] Contestants have not pointed to one voting statute or ordinance that City has violated in conducting this special election. The trial court rejected the argument, as do we, that SDCL 12-14-4 applies to the case at hand. SDCL 12-14-4 provides:
In all precincts the board of county commissioners shall adjust the size of any precinct at which there was unreasonable waiting time imposed upon the voters at the last preceding general election. Under ordinary circumstances, more than thirty minutes waiting time is deemed unreasonable waiting time except at the time when the polls close.
*339 Rather, City is governed by SDCL 9-13-36, which provides:
If a municipality is divided into wards and all of the wards use the same polling places, the governing body of the municipality may appoint a single election board for all of the wards. The election board appointed pursuant to this section shall consist of a minimum of one judge and two clerks.... If all of the wards are voting on an identical ballot, a single ballot box and one pollbook may be used for all wards.
This statute makes it clear that the legislature expressly permits the City to use one polling place and one election board. This Court fails to see how long lines or inadequate parking equate to voting irregularities to the level of not being a "free and fair expression of the people." Mere inconvenience or delay in voting is not enough to overturn an election. Without proof of a violation of state or local election law, there is no showing that the trial court's findings are clearly erroneous.
[¶ 9.] It is also true that before we conduct a "but for" analysis to determine whether the election outcome may have been different had those "disinfranchised" been able to vote, Contestants must show, as a prerequisite, that voting irregularities exist.[1]See Abbott v. Hunhoff, 491 N.W.2d 450, 452 (S.D.1992). Although election officials may have misjudged voter turnout, an election that culminates in "a free and fair expression of the will of the voters should not be overturned due to the mistakes or neglect of an election official." Becker v. Pfeifer, 1999 SD 17, ¶ 27, 588 N.W.2d 913, 920 (Amundson, J. concurring in result). While Contestants cited numerous alleged voting irregularities in their complaint, they failed to prove such irregularities at trial.[2]
[¶ 10.] Therefore, we affirm.
*340 [¶ 11.] MILLER, Chief Justice, and SABERS, KONENKAMP, and GILBERTSON, Justices, concur.
NOTES
[1] Even if we were to assume voting irregularities existed which rose to the level of not being a "free and fair expression of the voters," counsel for Contestants conceded in his argument to the trial court that "who knows how many people showed up on election day." This statement reveals that counsel has no idea how many potential voters left the lines without voting or how they would have voted. "[A]n election will not be overturned upon the mere mathematical possibility that the results could have been changed, when the possibilities all combine to repel any such conclusion." Buonanno v. Distefano, 430 A.2d 765, 770 (R.I.1981). Likewise, Contestants have provided no evidence that anyone was turned away. To the contrary, the evidence shows that those still in line after 7 p.m. were still permitted to cast their vote. In an election contest, the contestants clearly have the burden of proof, which they have failed to meet. Larson, supra.
[2] Contestants cite Ury v. Santee, 303 F.Supp. 119 (N.D.Ill.1969) as being "remarkably similar" to the case at hand. Appellant Brief, p. 23. The Ury case is not binding on this Court and is easily distinguishable. The Ury case was brought under 28 USC § 1983, and the district court determined that there were equal protection and due process violations due to the town's organization of available voting places. Not only was this action brought solely under SDCL ch 12-22, no claims of equal protection or due process have been forwarded by Contestants. The facts and circumstances of Ury are also dissimilar to the case at hand. In Ury, the traffic and lines near the voting booths required police intervention. No such intervention was necessary here. In addition, the village in Ury was not relying on state law to combine voting wards. Here, the City employed SDCL 9-13-36 to combine voting wards to one voting location. It logically follows that there was no effective deprivation of the right to vote as claimed by Contestants. Moreover, in its complaint, Contestants alleged that the Mayor was biased in favor of the ballot measures; that poll watchers for Hospital delayed and hindered voter access to the ballot box; that voters were allowed to wear stickers in support of the measures, but those opposed had to remove their stickers; that poll workers encouraged those in favor of the measures to remain in line, but discouraged those against the measures to do the same. These allegations, if proven, could constitute voting irregularities. However, no evidence was presented to the trial court to prove same, nor were these allegations ever argued to this Court. Therefore, it is obvious they have been dropped from the litigation.